You may proceed. Thank you, good morning. May it please the court, my name is Pete Viteznik and I'm here on behalf of the appellant Randy Kaady and I'd like to reserve two minutes. This matter arises out of a diversity insurance coverage action and is on de novo review of a summary judgment. The first point I think that is most relevant is what the factual record was before the district court and viewing the evidence in the light most favorable to my client Mr. Kaady, we can only reach four conclusions. In other words, there's only four things that a reasonable juror viewing the evidence could have concluded. The first is that Mr. Kaady was aware of some cracks in the stone posts or pillars at the Collins Lake Resort. The second is, cracks on the cap or cracks as well on the masonry, the vertical risers if you will. Thank you. I think the record viewed in the light most favorable to my client would say that there would be cracks on both the caps and the actual stonework itself and if you look in the excerpt of record there's photos at ER 2470 but the record to be fair is not very clear because we have a deposition and we have a declaration so I think you'd have to assume that it was cracks on both the stone cap and the stonework itself which are two different items. I think the second thing that the jury could conclude is that importantly Mr. Kaady believed those cracks may have been caused by a third party, an impact. Okay it's unclear what that was but importantly viewing the evidence in the light most favorable to Mr. Kaady. Does that matter? I think it does your honor because what essentially we're looking at is this question. Was Mr. Kaady's work negligent and did that negligence cause damage to the work of others for which Midcontinent is responsible to pay? I'm sorry the question of his negligence doesn't seem to be at all relevant. I mean he might have been totally not negligent in his work. The question is whether or not this is covered by insurance and it's covered by, it's not covered by insurance if he has notice of the damage. So if he knows there were cracks the fact that he thinks the cracks may have been put there by the Martians or by you know doesn't matter whether it was his fault or not his fault. The point is he's buying insurance at the point he knows there might be a claim because look there's damage in those things. Importantly I think this gets to the the Melbicole Holdings case and there we have to look at I would suggest I think that's where the trial court erred is what property damage, the property damage is he seeking insurance for and this commercial general liability policy does not cover damage to his own work. It's the work of others, other trades in this case and the record is clear on this. The framing and the actual wood pillars upon which Mr. Kaady put his stonework. In other words there has to be evidence that he knew of that property damage based on looking at the policy which is. And you think the cracks don't put him on notice of that? I don't I believe in this record it doesn't because there's no evidence that those cracks in this record cause damage to the property for which he's now seeking coverage. That's the work of the other trades on the project. Even if we're one were to conclude well he knew of the cracks on the pillars. I thought he said look there were cracks, water can get in there. I mean he said this much right? He said that there were. Water can get in there and loosen those things. He said it could get in there. Well only if it rains only you know this is what's what happens if you've got cracks and it rains. This is in Portland? This is actually up on Mount Hood so it's it's a fair chance it might rain one day. There is a fair chance. What there's no evidence. It would be a different scenario if we were in the desert I would agree. But importantly there's no evidence in the record for example that actually water got in there. And this is three months before the policy was purchased. In addition there's two types of work and the record is clear this. There are the stone pillars themselves which if you look at the record he says he saw some of those that had some cracks in September. And then there's the stone work on the buildings themselves. And the record is clear he never saw prior to purchasing the Mid-Continent policy any cracks on the stone that was placed on the buildings. And so therefore I think again the entire claim for both the damage underneath the stone pillars and the damage underneath the stone on the buildings we should be allowed to proceed against Mid-Continent. But again there's nothing in the record that would say that he was aware of cracks on the stone on the buildings. Remember the procedural history. Mr. Cady settled the claim himself right? Yes. So did he first tender it to the insurance company? He did. That's in the record. It's buried in there. But the claim was tendered to Mid-Continent and then they denied. They denied it so he... It wasn't clear to me but I certainly believe you. It's in the very beginning. It must be in the record. It is and just to declare it. The case was settled. He agreed to be obligated to pay the Homeowners Association, the plaintiff in the underlying case, a sum of money and then he filed suit to get Mid-Continent to fulfill that obligation that he agreed to with the Homeowners Association. It's a bit convoluted but I think it hopefully that clears it up. No no I mean she's certainly entitled to do that. If he got coverage, she's entitled to settle the claim herself if the insurance company turns him down. I'd next like to talk again about this Melville Holdings case because I think that's very important to the review of this matter and what that court held was that the known loss doctrine, which is what the trial court basis ruling on, only disallows coverage where the loss to the insured has already occurred and, and this is the important part, and the insured knows that the loss was substantially likely to occur when it purchased the policy. Again, based on the record, including Mr. Cady's declaration, I believe there's a real issue of material facts being the light most favorable to Mr. Cady about whether or not he knew there was going to be a loss that would occur. There's no evidence in the record that there was any of this resulting property damage either on the stone pillars where he did see cracks or on the stone facade of the buildings itself where he didn't see. Let's take the pillar post part that he was aware of. As Chief Judge Kaczynski pointed out, it seems obvious that if there's cracks in the cap and in the masonry that there could be moisture that would seep in and get into the underlying structure. The posts were made of wood so that once he became of masonry cracks, which would be his responsibility under the policy, he's not insured for cracks in his own craftsmanship. Is that right? Yes, I think if you look at the your work portion of the policy it says he cannot obtain coverage for defects or damage to his own work on the stone. Okay, so if he caused the cracks, it was his negligence or whatever in causing the cracks, you don't think it would be reasonably foreseeable that if water settled like snow on the caps and would drip down and work its way in that there could be ultimately dry rot or water damage? I think it could be, but again we have to look at the record here where he stated clearly that there was three at the time of this September partial walkthrough. He thought there was some cracks and he thought there were three possible causes. Settling of the posts or impact of some third party. And what was the third? The third was that shrinkage of the wood posts. So settling or shrinkage, wood expands and shrinks as it new wood ages. Well that's what he said, but in terms of what he would reasonably have expected to flow, no pun intended, from that. For and you put in defective tiling and the tile or install the mirror or something and water gets in from the steam and collection or water that's normally present in a shower or sink or the like, wouldn't the installation, negligent installation of those fixtures or the tiling or whatever, if they allowed, foreseeably allowed, moisture to get into the walls and create the damage, why wouldn't that be reasonably foreseeable from the damage, property damage, that was I think again it comes down to, and this was a discussion in the Valley Forge case we cited, there is a difference between the insured knowing of a defect in its work, and here I don't even think we can say that, viewing the evidence in the light most favorable to Mr. Katie, he was aware of his defect causing those cracks. It may have been a third party. There's a difference between a defect and knowledge of the resulting damage. And I think you have to have actual knowledge of the resulting damage. And if you look at the cases, both in Oregon, the few that have touched on the subject and elsewhere, it also is likely that Oregon courts would adopt the standard that the insured must actually know and expect that they're going to get sued. If you look at all the cases cited by Mid-Continent to support their position, there those facts are quite a bit different. In those cases the insured actually in some cases had received a we're going to sue you for 2.6 million dollars and things like that. So again I think that is the factual distinction. And you're saying so therefore you read the policy as new, as actual knowledge. I think if you look at the actual policy language it says no of the bodily injury or property damage. I think it has to be the property damage for which you're seeking recovery. Mid-Continent I think even though it may be perfectly obvious that that's what's going to happen, I think nothing if it goes untreated. It may be perfectly obvious there are cracks and it was perfectly obvious there are cracks. The issue is the record says he believed, viewing it in his favor, that it was caused by a third party. He would never be liable for cracks that allowed water in if it was caused by... I guess this is where I'm not sure I agree with you. I thought the question of who's responsible for the damage is a separate issue. If you think this is sort of a damaged situation, it doesn't matter that you think you might not be liable. I mean let's say in fact the situation had been just slightly different. Let's say in fact he sees cracks and water has already seeped in and you know he shines a light in there and he sees mold has already started and there's obvious actual damage in there. Does he say, well I don't think this is my responsibility. I think this would have been caused by the carpenter, somebody else. He wouldn't be, he couldn't get insurance at that point just because he personally thinks it's not his responsibility. I think at that point I think there's a big factual distinction if he actually saw rot and damage and there are some photographs in the record if he had seen those, but I also think on a large project like this where there is distinct areas of work such as pillars versus the stone on the facade, there's a different issue. Taking your example, if he saw that the stone on the pillars was allowing water in but did not see any cracks on the facade. You're trying very hard to answer a different question than I asked. I apologize. So why don't you try answering the question I did ask. Let's say it's the same situation as now, as is now. Not different, not all this other stuff, but it happens that by the time he looks, water has already seeped in and he can tell that there is damage starting. The wood has already been, or the cracks have already let water in and they started causing damage to the substrate there. So let's say that's the situation. I would concede that if that was the situation, he would be barred because that damage of the work of others would be the property damage he was seeking. Even if he says, but I didn't cause the cracks, I am really pretty sure that the cracks were caused by, you know, I'm not really responsible. It wouldn't matter, the fact that he subjectively didn't think he was responsible for the cracks. I would think it would not matter there because he had seen the property damage to the work of the other trades. So all we're really debating is the question is how likely was it that damage would occur? I would say it was whether he knew. It's not how likely, it's whether he had a reasonable, likely understanding and knew that there was going, that there was actually property damage at the time he purchased the insurance. What he saw were cracks in his own work, in some areas, not the entire area. May I please have the microphone down a little bit? I have the palm all the time, I'm a little guy. May I please have the court. My name is Matt Hedberg. I represent Midcontinent Casualty Company. The Midcontinent policy covers property damage only if, prior to the policy, no insured knew that physical injury to tangible property or loss of use had occurred in whole or in part. Okay, so what is under the terms of ER 88, which is the general liability, Section 1 coverage is under B3, I think. It says prior to the policy and so on, knew, Katie knew that the property damage had occurred in whole or in part, as you're saying, and if he knew prior to the policy that the property damage occurred, then any continuation, change, or resumption of such known property, I'm adding known, property damage during or after the policy will be deemed to have been known prior. So it seems to me there are two acts of property damage in this of water or whatever, arguably being caused by the cracks, but that's a different property damage. And if the policy requires that he knew of the claimed property damage, because he's not seeking liability or coverage for the first property damage, that is the cracks that he may or may not have caused, what's the evidence that he knew of the underlying property damage? On this record, the only property damage that Focal Point knew of that we, at the time they purchased the policy was the cracks to the masonry. There aren't, we don't, it's a disputed issue of fact as to whether he knew of any other property damage. Why isn't that the end of the summary judgment? Pardon? Why isn't the end of it? So I think actually that question's been answered by a couple of other cases that have looked at this exact policy language on very similar facts. There's the Trinity Universal case that we cited from the Western District of Oregon where the insured contractor had applied to the building. Water penetration occurred, caused damage to other parts of the building, and in that case, the court said it didn't matter that the insured needed to know the extent of the liability that was caused by the property damage it caused, so long as, quote, the insured merely must be on notice of the property damage that resulted in liability prior to purchasing the policy. A second district court opinion just came out this summer from the District of Oregon. It's not in my briefing. It was decided in June. The case is Alkmaid v. Quanta Indemnity Company, 2014, Westlaw 2809838. In that case, the issue also was this identically worded known loss provision from the liability policy, and there were multiple aspects of property damage that had been caused by expanding soils. The insured argued that, for example, plumbing damage that occurred during the policy period that was not known prior to the policy period, that should be covered because the insured didn't know about it, and the court said no, that so long as there was property damage and the same underlying cause, it constitutes a continuation, change, or resumption of earlier property damage, which is the language that we have in our policy here. Did you file a 28-J letter alerting us to this case that's been out since June? I didn't, Your Honor. I didn't know I was supposed to. I just discovered the case this last week as I was updating the research. I can submit it afterwards. It's not too late to file a 28-J letter when you do discover it. A week is a week, you know. It gives us a chance to look at it ahead. It gives opposing counsel a chance to comment on it. So, Your Honor, to answer then your question, you look at the policy language, and because you've got property damage that occurred in whole or in part, any then continuation, change, or resumption of that property damage, that would be deemed known under the policy, and for that reason, there would be no coverage. If Your Honors have no further questions, I will urge you to affirm the district court judgment, granting summary judgment, and awarding MidCon. Its cost is the prevailing party. Thank you. You're out of time. The case is argued. We'll stand for a minute.
judges: Kozinski, Fernandez, Fisher